UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALERIE STRINGFELLOW, as Personal
Representative of the Estate of Alfred
Stringfellow, deceased,

    Plaintiff,

vs                                                  Case No: 03-75188
                                                    Honorable Victoria A. Roberts

OAKWOOD HOSPITAL AND MEDICAL
CENTER, and JOHN C. OWENS, M.D.,

    Defendants.
_____/

## OPINION AND ORDER REGARDING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I. INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment. For the following reasons, the Court **GRANTS** in part and **DENIES** in part, Defendants' Motion for Summary Judgment. The Court grants summary judgment as to both Emergency Medical Treatment and Active Labor Act ("EMTALA") 42 USC § 1395dd, claims. The Court will allow Plaintiff's state law claims to go to the jury.

**II. BACKGROUND**

This case arises out of the death of Plaintiff's decedent, Alfred Stringfellow ("Stringfellow"), from an alleged failure to diagnose and treat an aortic dissection. In her two count complaint, the Plaintiff brings various state law claims, including medical malpractice and violation of the EMTALA. The Defendants are Oakwood Hospital

1

("Oakwood") and Dr. John C. Owens ("Owens").

On January 3, 2002, at approximately 11:30pm, 51 year old Stringfellow arrived at Oakwood. He complained of chest pain and nausea. Stringfellow had a history of hypertension. He smoked a pack of cigarettes a day. He drank a pint of vodka a day. He was unemployed and uninsured. Owens attended to Stringfellow. He was given several lab tests including a chest xray and an electrocardiogram (EKG). The chest xray revealed an enlarged heart; the EKG showed a left ventricular hypertrophy. Around 2:43am on January 4, Stringfellow admitted to cocaine use which was shown by lab tests. He was seen by a social worker with regard to his substance abuse. At approximately 4:00am, Owens discharged Stringfellow. He was given Ativan for anxiety and instructed to report to a treatment center for his substance abuse.

On January 4, 2002, a few hours after discharge from Oakwood, Stringfellow was discovered dead at his home. He died from an aortic dissection. An aortic dissection is "a condition in which there is bleeding into and along the wall of the aorta (the major artery from the heart). This condition may also involve abnormal widening or ballooning of the aorta (aneurysm)." MedLinePlus, "aortic dissection" *at* http://www.nlm.nih.gov/medlineplus/ency/article/000181.htm#Definition.

The Plaintiff asserts violation of EMTALA under subsections (a) and (b). She claims Defendant Oakwood failed to appropriately screen Stringfellow by not doing a CT scan of his chest, and that it discharged him while he had an unstabilized emergency medical condition as defined in EMTALA. The Plaintiff argues Owens should have suspected and/or known that Stringfellow had an aortic dissection based on his presentation and medical history. Additionally, the Plaintiff brings state law claims for

failure to diagnose the aortic dissection against both Defendants.

The Defendants seek summary judgment on all claims. The Defendants claim they are entitled to summary judgment on the screening claim because the Plaintiff did not allege improper motive or that Oakwood fell below its own requirements by not completing a CT scan. Additionally, the Defendants assert that the claim that they discharged Stringfellow with an unstabilized emergency medical condition should be dismissed because Owens did not have actual knowledge of Stringfellow's aortic dissection. Lastly, the Defendants contend the state law claims are barred by Michigan's "wrongful conduct rule." The Defendants claim that because cocaine was a proximate cause of Stringfellow's aortic dissection, and the use of cocaine is illegal, Plaintiff would profit from Stringfellow's illegal activity if the claim is not dismissed.

### III.   STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v.*

*Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

## IV.   APPLICABLE LAW AND ANALYSIS

### A.   Violation of 42 USC § 1395dd - EMTALA Claims

The Plaintiff alleges violations of §1395dd based on Owens' failure to request a CT scan of Stringfellow's chest and for discharging him with an aortic dissection.

Section 1395dd requires, in pertinent part:

> (a) Medical screening requirement
> In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (withing the meaning of subsection (e)(1) of this section) exists.
>
> (b) Necessary stabilizing treatment for emergency medical conditions and labor
> (1) In general
> If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either -
> (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or
> (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.
> ...
> (e) Definitions
> (1) The term "emergency medical condition" means -
> (A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in -
> (i) placing the health of the individual...in serious jeopardy,
> (ii) serious impairment to bodily functions, or
> (iii) serious dysfunction of any bodily organ or part;
> ...

42 USC § 1395dd.

The purpose of EMTALA is to prevent hospitals from failing to provide medical screening to uninsured individuals that would have been provided a paying patient and to prevent transfer or discharge without taking steps that would have been taken for a paying patient. *Cleland v. Bronson Health Care Group, Inc.*, 917 F.2d 266, 268 (6th Cir.

1990). Congress wanted to restore the American tradition of "giving medical aid to anyone in need who appeared on the emergency room doorstep." *Thornton v. Southwest Detroit Hospital*, 895 F.2d 1131, 1132 (6th Cir. 1990).

### 1. Screening Claim - §1395dd (a)

The Plaintiff failed to state a claim against Oakwood for inappropriate screening under §1395dd(a). The Plaintiff alleges that Oakwood had an obligation to provide appropriate screening to determine if a medical emergency exists. [Complaint, ¶34]. Further, the Plaintiff claims Oakwood failed to detect Stringfellow's emergency condition. [Complaint, ¶35]. The Plaintiff's claim is based on Owens' failure to order a CT scan of Stringfellow, which allegedly would have indicated an aortic dissection.

The Plaintiff did not state a claim because she failed to allege inappropriateness, or improper motive regarding the screening of Stringfellow. The word "appropriate" in §1395dd (a) refers to "the motives with which the hospital acts. If it acts in the same manner as it would have for the usual paying patient, then the screening provided is "appropriate" within the meaning of the statute." *Cleland*, 917 F.2d at 272. In *Cleland*, the court dismissed an action for inappropriate screening for failure to state a claim. The plaintiffs brought an action because their son went to the hospital complaining of lower abdominal cramps and vomiting. He was misdiagnosed with gastroenteritis and discharged. He died within 24 hours from intussusception, which occurs when a part of the intestine telescopes within itself. While the plaintiffs alleged inappropriate screening, there was no allegation that the screening was in any way different than would have been offered to any other patient or was deficient in any way peculiar to the

patient's characteristics. *Id.* at 269. The court held the plaintiffs failed to state a claim because they failed to allege any inappropriateness in the medical screening in the sense required by the Act[1]. *Id.* at 271.

Similar to the complaint in *Cleland*, the Plaintiff alleges a violation of §1395dd (a) but does not allege how it was inappropriate. There are no allegations that Stringfellow was treated differently than any other patient or that the failure to order a CT scan was precipitated by an improper motive. Claims that a CT scan should have been ordered sound in medical malpractice, not EMTALA. Accordingly, the Plaintiff failed to state a claim for inappropriate screening under §1395dd (a), and summary judgment is appropriate.

### 2.    Failure to Stabilize Claim - §1395dd (b)

Defendant Oakwood is entitled to summary judgment on Plaintiff's claim that it violated §1395dd (b) by discharging Stringfellow with an unstabilized emergency medical condition. The Plaintiff claims that at the time of discharge, Owens knew or should have known that Stringfellow had an aortic dissection, and released him anyway without stabilizing his condition. [Complaint, ¶¶35-37]. Owens testified in his deposition that he did not suspect aortic dissection and did not know Stringfellow had one. [Defendants' Motion, Exhibit D, pp. 18-23]. The Plaintiff does not present any evidence to demonstrate anyone at the hospital had actual knowledge that Stringfellow had an aortic dissection at the time of his discharge.

---

[1]The Supreme Court referenced *Cleland*'s interpretation of "appropriate" in §1395dd (a) in *Roberts v. Galen of Virginia, Inc.*, 525 U.S. 249 (1999), but did not express an opinion because the issue was not before it.

"If the emergency nature of the condition is not detected, the hospital cannot be charged with failure to stabilize a known emergency condition." *Cleland*, 917 F.2d at 271. The language of the Act itself states that the protections of the requirement to stabilize before discharge or transfer do not apply until the hospital "determines" the individual has an emergency medical condition. 42 USC § 1395dd (b)(1). *See also Thornton*, 895 F.2d at 1134 (Once a patient <u>is found</u> to suffer from an emergency medical condition, the hospital must give the patient treatment to stabilize that condition...)(emphasis added); *Cleland*, 917 F.2d 266 (If the condition was not <u>ascertained</u> even though an appropriate screening was provided, then the hospital could not have violated its duty to stabilize.)(emphasis added). The Supreme Court held there is no improper motive requirement for a failure to stabilize claim, but indicated that it expressed no opinion as to whether actual knowledge is required for a failure to stabilize claim under §1395dd (b), leaving it to the lower courts to decide. *Roberts*, 525 U.S. at 254, n.2.

Because the Defendant met its burden by establishing there is no genuine issue of material fact as to whether it had actual knowledge of Stringfellow's aortic dissection when he was discharged via sworn testimony from Owens, Oakwood is entitled to summary judgment on this claim.

**B.    State Law Claims**

In addition to her EMTALA claims, the Plaintiff alleges medical malpractice, negligence, gross negligence and/or willful and wanton misconduct against both Defendants. [Complaint, Count I, p. 4]. The Defendants contend the claims are all barred by Michigan's "wrongful conduct rule" which prohibits recovery for injuries

8

caused in whole or in part by the plaintiff's own illegal activity.  The Defendants base their claim on the medical examiner's report that states that cocaine, the use of which is illegal, was a cause of Stringfellow's aortic dissection, along with hypertension. [Defendants' Motion, Exhibit B, p. 3].  The Plaintiff argues that the rule does not apply and regardless, it is an affirmative defense that was not properly pled.

The wrongful conduct rule was discussed in depth in *Orzel v. Scott Drug Company*, 449 Mich. 550 (1995).  "Michigan courts have long recognized the existence of the wrongful-conduct rule." *Id*. at 558-559. "The rationale that Michigan courts have used to support the wrongful-conduct rule are rooted in the public policy that courts should not lend their aid to a plaintiff who founded his cause of action on his own illegal conduct." *Id*. at 559.  The court explains, that a claim is barred by the wrongful conduct rule if the party must rely, in whole or in part, on an illegal act to establish his cause of action.  *Id*. at 558.  In *Orzel*, the court held the plaintiff's negligence claim against a pharmaceutical company for honoring her husband's fraudulent prescriptions, which led to his death, was barred by the wrongful conduct rule because passing fraudulent prescriptions is illegal.

For the rule to apply, there must be a showing that the plaintiff's illegal conduct was a proximate cause of the plaintiff's injuries for which he seeks compensation.  *Id*. at 565.  "The unlawful act must be at once the source of both his criminal responsibility and his civil right.  The injury must be traceable to his own breach of the law and such breach must be an integral and essential part of his case." *Id*. (citation omitted).

The wrongful conduct rule does not apply in this case.  Stringfellow's cocaine use is not an integral part of his case and was not a proximate cause of the injury as

contemplated in *Orzel*. The injury that the Plaintiff seeks compensation for is the Defendants' <u>failure to diagnose</u> aortic dissection. The Plaintiff is not suing because Stringfellow <u>had</u> an aortic dissection. The fact that he had an aortic dissection may have been proximately caused by his illegal drug use, but regardless of what caused the aortic dissection, it is the Defendants' failure to diagnose it that is the basis of the cause of action. Where the illegal act is incidental or collaterally connected to the cause of action, the wrongful conduct rule does not apply, although the illegal act may be important as explanatory of other facts in the case. *Orzel*, 449 Mich. at 564 (citation omitted).

Consequently, the Defendants are not entitled to summary judgment based on the wrongful conduct rule. Because this finding is dispositive, there is no need for the Court to address Plaintiff's claim that the wrongful conduct rule is an affirmative defense that was not properly pled by Defendants.

**C.      Subject Matter Jurisdiction**

Because the Court grants summary judgment on Plaintiff's EMTALA claims, there is no federal question subject matter jurisdiction pursuant to 28 USC § 1331, and only Plaintiff's state law claims remain. However, the district court may retain supplemental jurisdiction over state law claims after dismissal of the federal claims. 28 USC § 1367(c)(3). In making the determination, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion General Hospital, Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

Based on the stage of the litigation, the Court will continue to exercise

supplemental jurisdiction over the remaining state law claims.  The case was filed in 2003, and trial is scheduled to begin on February 7, 2006.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** summary judgment on both EMTALA claims and **DENIES** summary judgment on Plaintiff's state law claims.

**IT IS SO ORDERED**.

                                                /s/ Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated:  December 14, 2005

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on December 14, 2005.

s/Linda Vertriest
Deputy Clerk

---